# NO. 24-1970

In The

# United States Court Of Appeals
## For The Fourth Circuit

## JOSEPH N. STANLEY,

*Plaintiff - Appellant,*

v.

## CHRISTOPHER T. BOCOCK, individually and in his official capacity as a Police Officer of the Virginia State Police,

*Defendant - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

———————

## BRIEF OF APPELLANT

———————

Terry N. Grimes
Kaley J. Gordon-Shupp
TERRY N. GRIMES, ESQ., PC
320 Elm Avenue, SW
Roanoke, VA 24016
(540) 982-3711

Melvin E. Williams
Meghan A. Strickler
WILLIAMS & STRICKLER, PLC
1320 3rd Street, SW
Roanoke, VA 24016
(540) 266-7800

*Counsel for Appellant*

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1970        Caption: Joseph N. Stanley v. Christopher T. Bocock

Pursuant to FRAP 26.1 and Local Rule 26.1,

Joseph N. Stanley
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                        ☐YES☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                         ☐YES☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?         ☐YES☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Terry N. Grimes _____          Date: _____10/8/2024_____

Counsel for: Joseph N. Stanley _____

Print to PDF for Filing

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES.........................................................................ii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES .............................................................1

STATEMENT OF THE CASE..................................................................2

SUMMARY OF ARGUMENT..................................................................7

ARGUMENT .............................................................................................8

    Standard of Review.........................................................................8

    A.    The First and Fourth Amendments are violated when the police seize a citizen's social media (Facebook and Google) records because the citizen has expressed disdain for the government and the police. The district court therefore erred by granting the motion to dismiss..................................................................9

    B.    The District Court Also Erred by Denying the Motion for Leave to Amend the Complaint .................................................20

CONCLUSION.........................................................................................22

REQUEST FOR ORAL ARGUMENT....................................................23

CERTIFICATE OF COMPLIANCE.......................................................24

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Am. Civil Liberties Union, Inc. v. Wicomico County*,
  999 F.2d 780 (4th Cir. 1993)..........................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................22

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)..........................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................22

*Constantine v. Rectors & Visitors of George Mason Univ.*,
  411 F.3d 474 (4th Cir. 2005)..........................................................10, 11

*Cooksey v. Futrell*,
  721 F.3d 226 (4th Cir. 2013)..........................................................10

*Davis v. Piper Aircraft Corp.*,
  615 F.2d 606 (4th Cir. 1980)..........................................................20

*Floridians Protecting Freedom, Inc. v. Ladapo*,
  No. 4:24cv419-MW/MAF, 2024 U.S. Dist. LEXIS 189349
  (N.D. Fla. Oct. 17, 2024)..........................................................16

*Foman v. Davis*,
  371 U.S. 178 (1962)..........................................................20

*Francis v. Giacometti*,
  588 F.3d 186 (4th Cir. 2009)..........................................................22

*Goldfarb v. Mayor & City Council of Balt.*,
  791 F.3d 500 (4th Cr. 2015)..........................................................22

*Gonzalez v. Trevino*,
  602 U.S. 653 (2024)..........................................................*passim*

*Hartman v. Moore*,
    547 U.S. 250 (2006)..........................................................................7, 15

*Ibarra v. United States*,
    120 F.3d 472 (4th Cir. 1997)..............................................................8

*Imbler v. Pachtman*,
    424 U.S. 409 (1976)...........................................................................17

*Juriss v. McGowan*,
    957 F.2d 345 (7th Cir. 1992)............................................................13

*Laird v. Tatum*,
    408 U.S. 1 (1972)...............................................................................10

*Landmark Communications, Inc. v. Commonwealth*,
    217 Va. 699 (1977) ...........................................................................12

*McNeil v. United States*,
    508 U.S. 106 (1993)...........................................................................22

*Moore v. Equitrans, L.P.*,
    818 Fed. App'x 212 (4th Cir. 2020) .............................................21

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)....................................................................*passim*

*O'Connor v. Ortega*,
    480 U.S. 709 (1987)...........................................................................12

*Oliver v. United States*,
    466 U.S. 170 (1984)...........................................................................12

*Roper v. County of Chesterfield*,
    807 F. Supp. 1221 (E.D. Va. 1992) ...............................................20

*Ross v. Blake*,
    578 U.S. 632 (2016)...........................................................................21

*Sculti v. Finley*,
    89 N.Y.S.3d 311 (N.Y. App. Div. 2018) .......................................14

*Shalala v. Illinois Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000)............................................................................22

*Sherwood v. Mulvihill*,
  113 F.3d 396 (3d Cir. 1997)...........................................................13

*Speech First, Inc. v. Sands*,
  69 F.4th 184 (4th Cir. 2023)...........................................................10

*Texas v. Johnson*,
  491 U.S. 397 (1989)..........................................................................9

*Thomas v. Delmarva Power & Light Co.*,
  Civil Action No. RDB-15-0433, 2016 U.S. Dist. LEXIS 11245
  (D. Md. Feb. 1, 2016) .....................................................................21

*United States v. Hove*,
  848 F.2d 137 (9th Cir. 1988)...........................................................13

*United States v. Jacobsen*,
  466 U.S. 109 (1984)........................................................................12

*United States v. Rees*,
  957 F.3d 761 (7th Cir. 2020)...........................................................17

*Ward Electronics Services, Inc. v. First Commercial Bank*,
  819 F.2d 496 (4th Cir. 1987).............................................9, 20, 21

**Statutes:**

28 U.S.C. § 1291 .................................................................................1

42 U.S.C. § 1983 ...............................................................................17

Va. Code § 18.2-152.4......................................................................6, 18

**Constitutional Provisions:**

U.S. Const. amend. I ...............................................................*passim*

U.S. Const. amend. IV ...............................................1, 9, 12, 14

**Rules:**

Fed. R. App. P. 4(a)(1)(A) ........................................................................1

Fed. R. Civ. P. 12(b)(1) ...........................................................................6

Fed. R. Civ. P. 12(b)(6) ...........................................................................6

Fed. R. Civ. P. 15.....................................................................................22

Fed. R. Civ. P. 15(a) ...........................................................................9, 20

Fed. R. Civ. P. 15(a)(2)...........................................................................20

**Other Authorities:**

https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/
22-1025_k13j.pdf. ...................................................................................15

*Sol Wachtler*, Historical Society of the New York Courts,
https://history.nycourts.gov/biography/sol-wachtler (visited Nov. 13, 2024) .........19

Virginia's Judicial Circuits and Districts,
https://www.courts.state.va.us/courts/maps/home, last visited Nov. 25, 2024........13

## JURISDICTIONAL STATEMENT

Joseph N. Stanley filed suit in the United States District Court for the Western District of Virginia against defendant Christopher T. Bocock ("Bocock"), individually and in his official capacity as a Police Officer of the Virginia State Police, for violation of rights secured by the First and Fourth Amendments to the Constitution of the United States. (JA6-29.) Stanley appeals the district court's Final Judgment Order of September 23, 2024 (JA157) granting Bocock's motion to dismiss Stanley's claims with prejudice (JA30) and denying his motion for leave to file a second amended complaint (JA93). Stanley timely appealed the district court's final order of September 23, 2024. (JA158.) *See* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that "[t]he courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States." This appeal follows.

## STATEMENT OF THE ISSUES

1.     In this case where VSP Bocock seized a citizen's social media (Facebook and Google) records because the citizen has expressed disdain for the government and the Town of Rocky Mount Police Department, did the district court err by granting Bocock's motion to dismiss?

2.     Did the district court err by prohibiting Stanley from filing a second amended complaint?

## STATEMENT OF THE CASE

The facts alleged in the proposed second amended complaint (JA95-104) are as follows.[1]

Stanley is a community advocate who works to improve local government in the Town of Rocky Mount and the Rocky Mount Police Department. (JA96.) On April 27, 2021, VSP Bocock signed an affidavit and swore out a search warrant that compelled seizure of all of Stanley's Facebook records (the "Facebook search warrant"), namely "all documents, files, uploads, or images [video or still] concerning or related to the account associated with Facebook.com; specifically Facebook.com/joestanley24067 [sic]: for the period of May 30, 2020 to present [or when the account was closed/suspended], including but not limited to: account/subscriber information and email address[es] and telephone numbers, posts, video or picture uploads, [including time and date posting]. All direct message/Facebook messenger content received and sent [including time, date longitude and latitude and IP address]" for the period "May 30, 2020 to present." Bocock specifically stated in his affidavit that he sought seizure of plaintiff's Facebook records because "Joe Stanley has made several posts to facebook [sic] showing his *disdain* for the government and the Rocky Mount Police Department." (JA96 (emphasis added).)

---

[1] Stanley relies on brief on the factual allegations in the proposed second amended complaint (JA96-102), as did the district court below (JA139).

As a result of the seizure of the Facebook records, Bocock learned that Stanley had a Gmail account, joestanley24067@gmail.com, and on June 14, 2021, Bocock swore out a second search warrant to Google compelling seizure of all of Stanley's Google records for the period "5/01/2020 through present," including,

a.     Location Data: Any location data currently stored in relation to the email address identified below. This includes any historical physical addresses, latitude and longitude data, estimated latitude and longitude data, location history, or any other data captured and stored by Google by the listed Gmail user that would aid law enforcement in establish historical information related to the Gmail user account.

This would further include all information stored and maintained in the "My Activity" associated with the listed Gmail address. Specifically, all information currently stored in reference to the users "Timeline in Google Maps."

Location information can be in the form of historical records. Specific to GOOGLE, this would include any reports of device activity that would include the approximate latitude and longitude of the device at the time of the activity, direction and distance from the tower, an other [sic] location related information.

b.     Account Information: To include all account owner/user identification information, to include all information listed in the "your personal info" within the Google My Account screen. This is to include any stored data that would aid in identifying the user/owner of the listed Gmail account. Any IP addresses related date access, logins, or browsing history, forwarding phone numbers, SMS forwarding numbers, alternative email addresses, and any linked social media accounts would be included in this request.

Further included in "account information" is all information currently stored in reference to the users account to include, Google search history, websites visited history, map search history, and any other information associated with location history, device information and recently used devices.

c. Application History: to include all apps downloaded from the Google Play Store to the current devices associated with this Gmail address. This request will include the association of each app to a specific device when available and the date the app was downloaded.

d. Email Content: Any Email Content currently stored in relation to the email address identified below.

e. Any and all Google drive content shared by and with the subscriber.

(JA97-98.)

As with the Facebook search warrant, Bocock specifically stated in his affidavit that he sought seizure of Stanley's Facebook records because "Joe Stanley has made several posts to facebook [sic] showing his *disdain* for the government and the Rocky Mount Police Department." (JA98 (emphasis added).) Bocock added that a "search warrant response from facebook [sic] shows information being shared with Mr. Joe Stanley by multiple people via email to a google email address 'joestanley24067@gmail.com.'" (JA98.)

As a result of the seizures, Bocock received hundreds of pages of records from Stanley's Facebook and Google accounts. Stanley alleges that Bocock took this action for the express purpose of invading Stanley's privacy and obtaining, among other things, Stanley's social media posts, discovering with whom Stanley was associating and communicating through Facebook and Google concerning any alleged "disdain" for the government and the Town of Rocky Mount Police Department, where Stanley was located when posts and communications were made, and what websites he had

4

visited. Stanley alleges that the warrants are therefore akin to general warrants. (JA98.) Stanley further alleges that the warrants were designed and intended to harass and intimidate plaintiff and to chill the exercise of his constitutional rights of speech and association. (JA99.)

Stanley alleges that Bocock had no probable cause to obtain the search warrants. To this day, no charges have ever been brought against Stanley or anyone else as a result of any criminal activity alleged in the search warrants, for there was no evidence that any crime had been committed. The local prosecutor in Franklin County declined to file criminal charges, recused himself, and asked the Circuit Court to appoint a special prosecutor from another jurisdiction to investigate the matter. As a result, Bryan Haskins, the Commonwealth's Attorney for Pittsylvania County (which borders Franklin County to the east), was appointed special prosecutor to investigate the matter. Haskins quickly recognized that there was no probable cause that a crime had been committed and stated that,

> [T]he crime of computer trespass requires that the video in question was not only duplicated and removed without authorization, but that it was also done with either a malicious intent or by intentionally deceptive means. Upon review of all the facts and information you [Bocock] have discovered and included in your report, I am of the opinion that there is not sufficient evidence to prove either malice or that the copy was obtained through an intentionally deceptive means. Therefore, I am of the opinion that there is no crime which can be prosecuted arising from this incident.

Haskins therefore declined to prosecute. (JA99-100.)

Stanley alleges that even a rudimentary investigation would have revealed that the crime of "computer trespass" alleged in the affidavit in violation of Virginia Code § 18.2-152.4 (1950), as amended (*see* JA17, JA28) could not have occurred because there was no evidence that a computer was involved in the alleged crime. The word "computer" does not even appear among the "material facts constituting probable cause that the search should be made" in the search warrants. The search warrants merely state that Stanley "posted the 17 minute surveillance video footage to Facebook on April 12, 2021" (JA17) and that he "posted an unauthorized copy of the surveillance video footage to Facebook on April 12, 2021" (JA28). Stanley alleges that the search warrants do not allege that a computer was involved in any way in any alleged crime, and that for this additional reason, there was no probable cause that Stanley or anyone else had committed the crime of "computer trespass." (JA100.)

Bocock filed a motion to dismiss for lack of jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (JA30-31.) Stanley filed a motion for leave to file an amended complaint. (JA32-43.) The district court granted the motion (JA44), and Stanley filed a first amended complaint. (JA45-53.) Bocock then filed a second motion to dismiss. (JA54-55.) The motion was argued on March 13, 2024. (JA58.) During the argument, Stanley advised that he wished to file a second amended complaint (JA79) and filed on May 10, 2024 a motion for leave to amend. (JA93-117.) Bocock opposed the motion. (JA4.) The Court heard oral argument on

July 11, 2024. (JA119.) On September 23, 2024, the district court entered an order denying the motion for leave to amend and granting the motion to dismiss. (JA157; *see* JA138-156.)

Further detailing of facts is reserved for argument.

## SUMMARY OF ARGUMENT

The overarching issue is whether the police may seize a citizen's social media (Facebook and Google) records because the citizen has expressed disdain for local government and the police. The answer is, they may not.

The district court properly recognized that "neither the Supreme Court nor the Fourth Circuit has ruled on the issue of whether probable cause defeats a retaliatory search warrant claim." (JA149.) The district court found, however, that *Nieves v. Bartlett*, 587 U.S. 391 (2019) (retaliatory arrest claims) and its predecessor, *Hartman v. Moore*, 547 U.S. 250 (2006) (retaliatory criminal prosecution claims) are "instructive in the context of retaliatory search warrant claims" (JA149-150) and held that "probable cause bars retaliatory search warrant claims." (JA148.)

As will be shown, the district court was wrong for two reasons. First, even if we assume that the search was supported by probable cause, neither *Hartman* nor *Nieves* apply in cases like this one, which do not involve a retaliatory *arrest*. Second, even if *Nieves* or *Hartman* somehow apply (and the appellant insists that they do not), the appellant satisfied the *Nieves* (and *Hartman*) exception to the probable cause rule.

Notably, the district court overlooked *Gonzalez v. Trevino*, 602 U.S. 653 (2024), decided shortly before oral argument below. *Gonzalez* is the Court's latest statement on this exception. In it, the Court explicitly held that the only limitation on the kind of evidence that the plaintiff must present at the threshold stage is that this evidence must be "objective." *Id.* at 658. Here, Stanley presented just such evidence. Bocock's own words provided the objective evidence needed to permit the claim to proceed: Bocock plainly stated in his affidavits "that Joe Stanley has made several posts to facebook [sic] showing his *disdain* for the government and the Rocky Mount Police Department." Under *Gonzalez*, this is precisely the objective evidence that obviates the magistrate's probable cause finding and permits the case to proceed. This case therefore fits within the heartland of the *Nieves* exception. The district court should have so found and denied the motion to dismiss and granted the motion for leave to file an amended complaint.

## ARGUMENT

### Standard of Review

The standards of review with respect to each of the issues are as follows.

1.    An appellate court reviews dismissal de novo, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2.     The standard of review of the district court's refusal to permit a plaintiff to file an amended complaint under Fed. R. Civ. P. 15(a) is whether the district court abused its discretion. *Ward Electronics Services, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (the issue on appeal was "whether the district court abused its discretion in denying Ward's motion to amend its Amended Complaint.").

**A.     The First and Fourth Amendments are violated when the police seize a citizen's social media (Facebook and Google) records because the citizen has expressed disdain for the government and the police. The district court therefore erred by granting the motion to dismiss.**

> It is a core postulate of free speech law that the government may not discriminate against speech based on the ideas or opinions it conveys. Suppression of the speech of one who expresses disdain for the police department violates the bedrock principle underlying the First Amendment that the government may not silence the expression of an idea simply because society finds the idea itself offensive or disagreeable.

*Texas v. Johnson*, 491 U.S. 397, 414 (1989) (citations omitted) (internal quotations omitted). It is difficult to imagine a clearer violation of the First Amendment than when the police seek to suppress one who expresses "disdain" for local police by seizing the speaker's social media accounts. Speech posted on social media is the 21st century equivalent of handing out pamphlets or leaflets in days gone by, for social media is the 21st century marketplace. This is the very essence of First Amendment expression.

Handing out leaflets "is the essence of First Amendment expression" and no "form of speech is entitled to greater constitutional protection." Leafleting and pamphleteering often allow communication face to face. And the pamphleteer may well feel his speech has greater resonance away from a state-sanctioned table. "For the Revolutionary generation . . . the pamphlet had peculiar virtues as a medium of communication," for it "allowed one to do things that were not possible in any other form." The importance of petitioning likewise cannot be understated as it is expressly protected by the First Amendment alongside the freedom of speech.

*Speech First, Inc. v. Sands*, 69 F.4th 184, 215-16 (4th Cir. 2023) (Wilkinson, dissent) (citations omitted).

"[S]peech need not be banned outright to trigger First Amendment protections. Individuals suffer a concrete injury even when the state has simply 'chilled' the right to engage in free speech and expression." *Speech First*, at 192 (citing *Cooksey v. Futrell,* 721 F.3d 226, 235 (4th Cir. 2013)). Chilling speech is cognizable when the asserted chill "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). To bring a speech chilling claim, Stanley must at least show that he has suffered an injury or threat of injury that is credible, not imaginary, or speculative. *Cooksey*, 721 F.3d at 235; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

Of course, we are not dealing merely with a university policy here. Unlike the plaintiffs in *Speech First*, Stanley has stated an actual claim for Bocock's actions

which chilled Stanley's right to free speech. Stanley has been subjected to an unjustifiable intrusion into his privacy for no other reason than he criticized the local government and police department. Bocock seized Stanley's social media accounts because Stanley had expressed "disdain" about the local police. Bocock wanted evidence of exactly what Stanley was saying and with whom he was speaking. It is hardly "imaginary or speculative" that if the government is free to rummage through a citizen's private communications—in violation of his right to be secure both in the private expression of his thoughts and in the "papers" of information he stores electronically—even a person of extraordinary firmness would be wary of committing to writing thoughts which would antagonize the state and provoke further and greater intrusions into his life.

The chilling of Stanley's freedom to speak arises from the invasion of his privacy through the illicit use of the state's search warrant power to pursue a vendetta on behalf of the RMPD by Bocock. The defense has never identified any criminal act supposedly committed by Stanley or how the overly broad request for data from his email and social media accounts would have revealed any criminal activity. The district court characterized Stanley's First Amendment Claim as "a retaliatory search warrant claim," and observed that "[t]he Fourth Circuit has stated, 'First Amendment retaliation is actionable because 'retaliatory actions may tend to *chill* individuals' exercise of constitutional rights,'" citing, *Constantine*, 411 F.3d at 500

(quoting *Am. Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) (emphasis added)). (JA147 n. 4 (cleaned up).)

Stanley's exercise of his First Amendment rights is not merely limited to the right of an individual to speak out against the government without fear of retaliation or harassment. Stanley also serves as a citizen journalist by publishing his views through social media. While Virginia does not have a shield law, courts recognize a reporter's privilege based on the First Amendment to the U.S. Constitution. *Landmark Communications, Inc. v. Commonwealth*, 217 Va. 699, 706-07 (1977).

Next, the Fourth Amendment grants the American people the right to remain free from unreasonable governmental searches. As interpreted by the Supreme Court, "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (observing that there is "no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable" and outlining the factors weighed by the courts, such as "'the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion'" (quoting *Oliver v. United States*, 466 U.S. 170, 178 (1984)). While the amendment does provide for an exception where the government obtains a judicially valid warrant, the mere

possession of a warrant does not give the government carte blanche authority to infringe on the citizen's civil liberties. Rather, the warrant must be facially valid and obtained in good faith. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *see also United States v. Hove*, 848 F.2d 137, 139-40 (9th Cir. 1988) (holding that a search warrant that is executed in good faith but "so deficient that any official belief in the existence of probable cause must be considered unreasonable" is not sufficient); *see also Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992) (holding that even a facially valid warrant does not support an arrest when the officers executing the warrant know it is not supported by probable cause).

Bocock obtained the search warrants in bad faith and for an unlawful purpose. He was acting for the benefit of the RMPD which recruited him for the express purpose of masking their effort to harass and intimidate Stanley and to chill his constitutional right to criticize, or express "disdain," for the government and the police. Bocock sought the warrants in two different jurisdictions and in a different judicial circuit from where the alleged criminal activity occurred.[2] In the affidavits supporting the application for the warrants, Bocock openly conceded that Stanley

---

[2] The Facebook search warrant was filed in the Circuit Court for the City of Roanoke. (JA14.) The Google search warrant was filed in the Circuit Court for the City of Salem. (JA24.) Both are in Virginia's 23rd judicial circuit. (Virginia's Judicial Circuits and Districts, https://www.courts.state.va.us/courts/maps/home, last visited Nov. 25, 2024.) However, Stanley resides in Franklin County (JA107)—the same county as the RMPD—in the 22nd judicial circuit. *Id.*

was a target because of his exercise of his free speech rights to criticize the RMPD. This is plainly an unreasonable search and seizure in violation of the Fourth Amendment. *Cf. Sculti v. Finley*, 89 N.Y.S.3d 311, 313 (N.Y. App. Div. 2018) ("[V]iewing the allegations in the complaint in the light most favorable to the plaintiffs, the complaint stated a cause of action based upon Forbes's conduct in connection with obtaining the search warrant. We cannot say at this stage of the action whether Forbes is entitled to qualified immunity." (citations omitted)).

Stanley pled facts sufficient to state a claim for violation of the First and Fourth Amendments. The district court found, however, that "Stanley's First and Fourth Amendment claims fail as a matter of law because both search warrants were supported by probable cause." For this reason, the district court ruled that "Stanley's motion for leave to file a second amended complaint will be denied, and Bocock's motion to dismiss will be granted." (JA142.)

But the district court was wrong for two reasons. First, even if we assume that the search was supported by probable cause, *Nieves* does not apply in cases like this one, which do not involve a retaliatory *arrest*. Arrest, after all, is at the heart of the *Nieves* probable cause rule. The Supreme Court created the rule based on common law torts of malicious prosecution and false arrests that required plaintiffs to overcome the probable cause bar. *Nieves*, 587 U.S. at 405. So, it made sense why a similar requirement would apply to constitutional claims involving retaliatory

arrests, which are analogous to these common law torts. Seizures, however, are not arrests. They are more analogous to the tort of trespass, which never had a probable cause component. Alternatively, they can also be compared to the tort of abuse of process, which also lacked the probable cause requirement, focusing instead on the ulterior motive of the defendant.[3]

In addition, even if *Nieves* (and *Hartman*) somehow apply (and the appellant insists that they do not), the appellant satisfied the *Nieves* exception to the probable cause rule.

*Gonzalez v. Trevino*, 602 U.S. 653 (2024), is the Court's latest statement on this exception. In it, the Court explicitly held that the only limitation on the kind of evidence that the plaintiff must present at the threshold stage is that this evidence must be "objective." *Id.* at 658. Here, the appellant presented just such evidence. Bocock's own words provided the objective evidence needed to permit the claim to

---

[3] As Justice Gorsuch asked during argument in *Gonzalez*, "[w]hy should this Court turn a blind eye to abuse of process as a common law analogue, which we usually look to common law tort analogues when interpreting 1983?" Transcript of Oral Argument at 40, *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (No. 22-1025), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-1025_k13j.pdf. Justice Gorsuch also observed that "the point is the process, yes, it was supported and it – it was properly done. The magistrate here signed off on it, but it was being done for an ulterior purpose. And I think that's the allegation here." *Id.* at 42. Here as in the case at bar, the plaintiff alleged that "[i]t was being done for an ulterior purpose, to push me out of the political process and silence me." *Id.* at 43.

proceed: Bocock plainly stated in his affidavits "that Joe Stanley has made several posts to facebook [sic] showing his *disdain* for the government and the Rocky Mount Police Department." Under *Gonzalez*, this is precisely the objective evidence that obviates the magistrate's probable cause finding and permits the case to proceed. This case therefore fits within the heartland of the Nieves exception, and the district court should have so found. In the recent words of the district court for the Northern District of Floride (Walker, J.), which granted an injunction prohibiting the Florida Attorney General from censoring speech by demanding that television stations remove political advertisement limiting government interference with abortion or face criminal prosecution, "[t]o keep it simple for the State of Florida, it's the First Amendment, stupid." *Floridians Protecting Freedom, Inc. v. Ladapo*, No. 4:24cv419-MW/MAF, 2024 U.S. Dist. LEXIS 189349, *4 (N.D. Fla. Oct. 17, 2024). A similar admonition is appropriate here.

The district court below specifically noted that "neither the Supreme Court nor the Fourth Circuit has ruled on the issue of whether probable cause defeats a retaliatory search warrant claim." (JA149.) With the benefit of *Gonzalez* and a less cramped view of *Nieves*, the district court should have reached a different conclusion and denied the motion to dismiss and granted the motion for leave to amend. Accordingly, this Court should find either that *Nieves* does not apply or that the

allegations here meet the *Nieves* exception. Either way, the district court should have denied the motion to dismiss and permitted the case to proceed.

As things stand, the district court's opinion leaves the First Amendment woefully under-protected. Returning to first principles, state government officials violate the First Amendment when they arrest a person in retaliation for protected expression. *Nieves*, 587 U.S. at 397. Probable cause neither prevents nor purifies the violation. *Id.*; *id.* at 412 (Gorsuch, J., concurring). Not even an arrestee's guilt of a crime cleanses a retaliatory arrest of unconstitutionality. *See id.* at 407. Nor does the text of Section 1983 make liability turn on the presence or absence of probable cause, much less guilt of some crime. *See* 42 U.S.C. § 1983. Indeed, Section 1983 says nothing about probable cause or defenses to liability. And the only way to read Section 1983 "in harmony" with general common-law principles that existed in 1871 is to treat claims like Stanley's (computer trespass) differently from claims like Gonzalez's (abuse of process). *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).

If a search warrant bars all First Amendment claims, as the district court contends, then government officers with an ounce of strategy may easily arrange their opponents' arrests and avoid liability. After all, the law books are filled with crimes for which "noncriminal acts, taken altogether" supply probable cause. *United States* v. *Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

The district court found that that the magistrate's probable cause finding shielded Bocock from liability as a matter of law. As *Gonzalez* and a proper reading of *Nieves* makes clear, this is not true. Moreover, unlike the plaintiff in *Gonzalez*, Stanley here alleges that the search warrants were not supported by probable cause. To this point, the Amended Complaint alleges,

> (17) Defendant had no probable cause to obtain the search warrants, and to this day no charges were ever brought against plaintiff or anyone else as a result of any criminal activity alleged in the search warrants, for there was no evidence that any crime had been committed.
>
> (18) In fact, the local prosecutor in Franklin County declined to file criminal charges, and recused, and asked the Circuit Court to appoint a special prosecutor from another jurisdiction to investigate the matter.
>
> (19) As a result, Bryan Haskins, the Commonwealth's Attorney for Pittsylvania County (which borders Franklin County to the east), was appointed special prosecutor to investigate the matter.
>
> (20) Mr. Haskins quickly recognized that there was no probable cause that a crime had been committed and stated that "the crime of computer trespass requires that the video in question was not only duplicated and removed without authorization, but that it was also done with either a malicious intent or by intentionally deceptive means. Upon review of all the facts and information you [Bocock] have discovered and included in your report, I am of the opinion that there is not sufficient evidence to prove either malice or that the copy was obtained through an intentionally deceptive means. Therefore, I am of the opinion that there is no crime which can be prosecuted arising from this incident." Mr. Haskins therefore declined to prosecute.

(JA49.)

Next, Stanley also alleges that,

> (21) Further, even a rudimentary investigation would have revealed that the crime of "computer trespass" alleged in the affidavit in violation of Virginia Code §18.2-152.4 (1950), as amended (see ECF 1-

1, at 4, and 1-2, at 5) could not have occurred because no computer was involved in any of the acts described in the search warrant.

(22)     The word "computer" does not even appear among the "material facts constituting probable cause that the search should be made" in the search warrants. The search warrants merely state that Stanley "posted the 17 minute surveillance video footage to Facebook on April 12, 2021" (See ECF 1-1, at 5) and that he "posted an unauthorized copy of the surveillance video footage to Facebook on April 12, 2021." (See ECF and 1-2, at 9).

(23)     The search warrants do not allege that a computer was involved in any way in the alleged crime.

(24)     For this additional reason, there was no probable cause that Stanley or anyone else had committed the crime of "computer trespass."

(JA50.) Moreover, although it is often said that any prosecutor worth his salt could indict a ham sandwich,[4] the evidence here was so thin that the prosecutor assigned to investigate the case determined that *no probable cause* existed to bring criminal charges against anyone, and indeed none were ever brought. The search warrants issued here were never anything more than a pretext to enter Stanley's electronic home and seize his social media accounts at the request of the local police, so they could determine what Stanley was saying and with whom he was communicating, and from this evidence a jury could so find. In that sense the search warrants at issue here are the 21st century equivalents of general warrants.

    For all these reasons, the district court should have denied the motion to dismiss.

---

[4] The quote is attributable to the Honorable Solomon Wachtler, former Chief Judge of the New York State Court of Appeals. *See Sol Wachtler,* Historical Society of the New York Courts, https://history.nycourts.gov/biography/sol-wachtler (visited Nov. 13, 2024).

**B.      The District Court Also Erred by Denying the Motion for Leave to Amend the Complaint.**

From the foregoing, it follows logically that the district court also erred by failing to allow Stanley to file a second amended complaint. Rule 15 supports the filing of an amended complaint and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Roper v. County of Chesterfield*, 807 F. Supp. 1221 (E.D. Va. 1992), the court observed that "[l]eave to amend is granted liberally, and to justify a denial of such leave, it must appear to the Court that the amendment is futile, offered in bad faith, prejudicial or otherwise contrary to the interests of justice." *Id.* at 1224 (quoting Fed. R. Civ. P. 15(a)) (other citation omitted). In *Ward Electronics Services, Inc. v. First Commercial Bank*, 819 F.2d 496 (4th Cir. 1987), the only issue on appeal was "whether the district court abused its discretion in denying Ward's motion to amend its Amended Complaint." *Id.* at 497. There, the Fourth Circuit reversed the district court's refusal to permit the plaintiff to file an amended complaint, and reasoned that,

> [Rule 15] provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., futility of amendment, etc." In *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), we noted that under *Foman* a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay

absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

*Ward Electronics*, at 497 (parallel citation omitted). Similarly, in *Thomas v. Delmarva Power & Light Co.*, Civil Action No. RDB-15-0433, 2016 U.S. Dist. LEXIS 11245 (D. Md. Feb. 1, 2016), the court stated,

> A trial judge has discretion to grant or deny leave to amend a complaint. A judge may not, however, exercise that discretion arbitrarily or in a way that undermines the liberal policy of the rule. Therefore, when facts averred by a plaintiff in a complaint "may be a proper subject of relief," the court should allow him "an opportunity to test his claim on the merits."

*Id.* at *5–6 (internal citations omitted).

Given *Gonzalez* and a fair reading of *Nieves*, and for the other reasons stated above, the district court erroneously found that the amendment would be "futile." Moreover, "futility" is an insufficient reason for denying leave to amend. For example, in *Moore v. Equitrans, L.P.*, 818 Fed. App'x 212, 213–14 (4th Cir. 2020), the Fourth Circuit held that it was an abuse of discretion for the district court to refuse the plaintiffs' request to amend their complaint merely on the grounds that it would be "futile."

With further respect to the futility doctrine, the Supreme Court reminded in *Ross v. Blake*, 578 U.S. 632, 639 (2016) that judge-made law must yield to the statutory text: "Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." (citing

*McNeil v. United States*, 508 U.S. 106, 111 (1993); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12–14 (additional citations omitted)). The "futility doctrine" must yield therefore to the plain language of Rule 15.

Plaintiff need only state a claim that is plausible on its face. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacometti*, 588 F.3d 186, 193 (4th Cir. 2009). At this stage, Plaintiff has certainly alleged "sufficient facts 'to raise a right to relief above the speculative level.'" *Goldfarb v. Mayor & City Council of Balt.,* 791 F.3d 500, 508 (4th Cr. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). For all of these reasons, the district court erred by denying the leave to amend.

## CONCLUSION

Stanley therefore requests entry of an order reversing the judgment of the district court and remanding the case for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Stanley requests oral argument.

Respectfully Submitted,

JOSEPH N. STANLEY

By    /s/ *Terry N. Grimes*
Terry N. Grimes, Esq. (VSB No. 24127)
Kaley J. Gordon-Shupp, Esq. (VSB No. 96992)
TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, SW
Roanoke, VA  24016
(540) 982-3711 – Telephone
(540) 345-6572 – Facsimile
tgrimes@terryngrimes.com
k.gordon-shupp@terryngrimes.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

This document contains <u>5,735 words</u>.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using
Microsoft Word in <u>14 point Times New Roman</u>.

Respectfully Submitted,

JOSEPH N. STANLEY

By<u>     /s/ *Terry N. Grimes*          </u>
Terry N. Grimes, Esq. (VSB No. 24127)
Kaley J. Gordon-Shupp, Esq. (VSB No. 96992)
TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, SW
Roanoke, VA  24016
(540) 982-3711 – Telephone
(540) 345-6572 – Facsimile
tgrimes@terryngrimes.com
k.gordon-shupp@terryngrimes.com

*Counsel for Appellant*