No. 24-1970

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

JOSEPH N. STANLEY,

*Plaintiff – Appellant*,

v.

CHRISTOPHER T. BOCOCK, individually and in his official
capacity as a Police Officer of the Virginia State Police,

*Defendant – Appellee*.

On Appeal from the United States District Court
for the Western District of Virginia

## RESPONSE BRIEF OF APPELLEE

JASON S. MIYARES
  *Attorney General*

R. COOPER VAUGHN
  *Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

January 27, 2025

ERIKA L. MALEY
  *Solicitor General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

GRAHAM K. BRYANT
  *Deputy Solicitor General*

MEREDITH L. BAKER
  *Assistant Solicitor General*

*Counsel for Defendant-Appellee*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

ISSUES PRESENTED ........................................................................ 3

STATEMENT ..................................................................................... 3

    I.   Factual Background ............................................................... 3

    II.  Procedural History ............................................................... 7

STANDARD OF REVIEW .................................................................. 9

SUMMARY OF ARGUMENT ........................................................... 10

    I.   The district court correctly dismissed Stanley's Fourth Amendment unconstitutional-search claim ........................... 11

        A.  Stanley's Fourth Amendment claim cannot survive because Bocock had a warrant supported by probable cause ............................................................................... 12

        B.  In any event, Bocock is entitled to qualified immunity on the Fourth Amendment claim ...................................... 22

    II.  The district court correctly dismissed Stanley's First Amendment retaliatory-search-warrant claim ..................... 26

        A.  Stanley's First Amendment retaliatory-search claim fails because Bocock obtained a warrant supported by probable cause ............................................................. 26

        B.  In any event, Bocock is entitled to qualified immunity on the First Amendment claim ......................................... 40

    III.  The district court appropriately denied leave to amend as futile ................................................................................. 42

CONCLUSION ........................................................................ 45

CERTIFICATE OF COMPLIANCE....................................... 46

CERTIFICATE OF SERVICE.................................................. 47

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Ferguson,*
884 F.3d 219 (4th Cir. 2018) ........................................................ 23, 24

*United States ex rel. Ahumada v. NISH,*
756 F.3d 268 (4th Cir. 2014) ............................................................. 44

*Anand v. Ocwen Loan Servicing, LLC,*
754 F.3d 195 (4th Cir. 2014) ............................................................. 44

*Anderson v. Creighton,*
483 U.S. 635 (1987) ...................................................................... 24, 26

*Armendariz v. City of Colo. Springs,*
No. 1:23-cv-01951, 2024 WL 2139316 (D. Colo. Apr. 10,
2024) ................................................................................................... 34

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ............................................................................ 24

*Ballentine v. Tucker,*
28 F.4th 54 (9th Cir. 2022) ................................................................ 33

*Camara v. Municipal Ct. of the City & Cnty. of S.F.,*
387 U.S. 523 (1967) ............................................................................ 12

*Chavez v. City of Albuquerque,*
No. 13cv00557, 2014 WL 12796875 (D.N.M. Apr. 14, 2014) ............. 34

*City of Tahlequah v. Bond,*
595 U.S. 9 (2021) ................................................................................ 24

*Commonwealth v. Wallace,*
907 S.E.2d 804 (Va. 2024) .................................................................. 17

*Coolidge v. New Hampshire,*
403 U.S. 443 (1971) ...................................................................... 39, 42

iii

*Degenhardt v. Bintliff,*
117 F.4th 747 (5th Cir. 2024) ................................................... 2, 27, 33

*Dellastatious v. Boyce,*
147 S.E. 267 (Va. 1929) .......................................................................... 36

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir.1999) .............................................................. 43

*Evans v. B.F. Perkins Co.,*
166 F.3d 642 (4th Cir. 1999) ............................................................... 9

*Fredin v. Clysdale,*
No. 18-cv-0510, 2018 WL 7020186 (D. Minn. Dec. 20,
2018) ............................................................................................................... 34

*Goines v. Valley Cmty. Servs. Bd.,*
822 F.3d 159 (4th Cir. 2016) ............................................................. 21

*Gonzalez v. Trevino,*
602 U.S. 653 (2024) .............................................................. 37, 39, 40

*Hall v. Putnam Cnty. Comm'n,*
No. 3:22-0277, 2024 WL 559603 (S.D. W. Va. Feb. 12,
2024) ............................................................................................................... 34

*Hartman v. Moore,*
547 U.S. 250 (2006) ................................................................... *passim*

*HCMF Corp. v. Allen,*
238 F.3d 273 (4th Cir. 2001) .................................................... 43, 44

*Hill v. Crum,*
727 F.3d 312 (4th Cir. 2013) ............................................................. 41

*Hulbert v. Pope,*
70 F.4th 726 (4th Cir. 2023) ............................................................. 23

*Illinois v. Gates,*
462 U.S. 213 (1983) ................................................................... *passim*

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................................23

*Malley v. Briggs*,
    475 U.S. 335 (1986)................................................................26

*Messerschmidt v. Millender*,
    565 U.S. 535 (2012)........................................................25, 41

*Moore v. Equitrans L.P.*,
    818 Fed. Appx. 212 (4th Cir. 2020)................................43, 44

*Mullenix v. Luna*,
    577 U.S. 7 (2015)....................................................................24

*Nazario v. Gutierrez*,
    103 F.4th 213 (4th Cir. 2024) ..........................................27, 31

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)................................................... *passim*

*Pearson v. Callahan*,
    555 U.S. 223 (2009)................................................... *passim*

*Perkins v. United States*,
    55 F.3d 910 (4th Cir. 1995)......................................................9

*Phillips v. Corbin*,
    132 F.3d 867 (2d Cir. 1998) ..................................................22

*Porterfield v. Lott*,
    156 F.3d 563 (4th Cir. 1998)..................................................13

*Reichle v. Howards*,
    566 U.S. 658 (2012)................................................................24

*SAS Assocs. 1, LLC v. City Council for the City of
    Chesapeake*,
    91 F.4th 715 (4th Cir. 2024) ....................................................9

*Save Our Sound OBX, Inc. v. North Carolina Dep't of Transp.*,
914 F.3d 213 (4th Cir. 2019) ........................................................ 9, 44

*Sheppard v. Visitors of Va. State Univ.*,
993 F.3d 230 (4th Cir. 2021) ...................................................... 22, 40

*Skoog v. County of Clackamas*,
469 F.3d 1221 (9th Cir. 2006) .......................................................... 33

*Smith v. Travelpiece*,
31 F.4th 878 (4th Cir. 2022) ............................................................ 36

*Smolicz v. Borough/Town of Naugatuck*,
281 Fed. Appx. 32 (2d Cir. 2008) ..................................................... 33

*In re Triangle Capital Corp. Securities Litig.*,
988 F.3d 743 (4th Cir. 2021) ............................................................ 44

*United States v. Blake*,
868 F.3d 960 (11th Cir. 2017) ......................................................... 20

*United States v. Blakeney*,
949 F.3d 851 (4th Cir. 2020) ........................................................... 13

*United States v. Briscoe*,
101 F.4th 282 (4th Cir. 2024) .......................................................... 13

*United States v. Conine*,
33 F.3d 467 (5th Cir. 1994) ............................................................. 21

*United States v. Darosa*,
102 F.4th 228 (4th Cir. 2024) .......................................................... 14

*United States v. Drake*,
64 F.4th 220 (4th Cir. 2023) ........................................................... 22

*United States v. Lalor*,
996 F.2d 1578 (4th Cir. 1993) ..................................................... 13, 14

*United States v. Leon*,
468 U.S. 897 (1984) .............................................................. 25, 39, 42

*United States v. McCall*,
    84 F.4th 1317 (11th Cir. 2023) ................................................... 19, 20

*United States v. Zelaya-Veliz*,
    94 F.4th 321 (4th Cir. 2024) ............................................................ 19

*Virginia Nat'l Bank v. United States*,
    443 F.2d 1030 (4th Cir. 1971) ......................................................... 23

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009) .............................................................. 8

*Wallace v. Commonwealth*,
    896 S.E.2d 384 (Va. App. 2024) ...................................................... 17

*Weinhaus v. Steele*,
    No. 4:17 CV 1941, 2019 WL 3803477 (E.D. Mo. Aug. 13,
    2019) ...................................................................................................... 34

**Statutes**

Va. Code § 18.2-152.2 ............................................................................ 16, 17

Va. Code § 18.2-152.4 .................................................................. 3, 4, 6, 16, 18

Va. Code § 19.2-44 ....................................................................................... 20

Va. Code § 19.2-70.3 .................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 15 ......................................................................................... 43

U.S. Const. amend IV ................................................................................. 12

## INTRODUCTION

Joseph Stanley posted on his Facebook page video surveillance footage unlawfully taken from a police department security system. To determine who had illegally obtained the footage, Virginia State Police Special Agent C.T. Bocock sought—and neutral magistrates issued—warrants to search Stanley's Facebook and Google accounts. Stanley's attempt to transform this computer-trespass investigation into a federal civil rights lawsuit fails because probable cause supported the search warrants.

The district court correctly identified that there was ample probable cause to support the warrants: given that Stanley posted the surveillance video on his Facebook page, there was a fair probability that evidence of where that video came from would be found in his accounts. This evidence was directly relevant to the investigation into who committed criminal computer trespass by illegally downloading police footage from an internal security system. Neutral magistrates agreed with Bocock's probable-cause determination and issued the warrants. Bocock's searches were thus pursuant to valid warrants supported by probable cause. They did not violate the First or Fourth Amendments.

In the Fourth Amendment context, a defendant challenging a search "will lose" if "the warrant issued was supported by probable cause." *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009). The district court correctly held that a claim that a search was retaliatory in violation of the First Amendment similarly fails if probable cause supported the search. JA150. As the Fifth Circuit has already held, the Supreme Court's holdings establishing this requirement for retaliatory-arrest and retaliatory-prosecution claims apply equally to alleged retaliatory searches. See *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006); *Degenhardt v. Bintliff*, 117 F.4th 747, 758–59 (5th Cir. 2024). Stanley's arguments to the contrary ignore the reasoning of these precedents and would create a circuit split. They would also open the floodgates to retaliation lawsuits against law enforcement officers merely for investigating crimes, seriously interfering with the operation of the criminal-justice system.

Because Bocock's lawful investigation into a computer trespass to sensitive police security systems fully complied with the Constitution, the district court correctly dismissed Stanley's complaint without leave to amend. This Court should affirm.

2

## ISSUES PRESENTED

1. Whether the district court correctly dismissed Stanley's unconstitutional-search claim under the Fourth Amendment because probable cause supported the search warrants.

2. Whether the district court correctly dismissed Stanley's retaliatory-search-warrant claim under the First Amendment because probable cause supported the search warrants.

3. Whether the district court correctly denied leave to amend when the proposed Second Amended Complaint suffered from the same fatal flaws as the First Amended Complaint.

## STATEMENT

### I.  Factual Background

The Rocky Mount Police Department maintains an internal security-camera system. JA56. An unidentified individual copied surveillance video filmed by this system on May 31, 2020, which the department discovered nearly a year later on April 12, 2021, when Joseph Stanley shared the illegally copied surveillance footage on his Facebook page. JA17.

Virginia Code § 18.2-152.4(A)(6) makes it a crime

> for any person, with malicious intent, or through intentionally deceptive means and without authority, to . . . [u]se a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs or computer software residing in, communicated by, or produced by a computer or computer network . . . .

After the department reported the trespass to the Virginia State Police, Special Agent Christopher T. Bocock began a criminal investigation to identify who committed computer trespass by illegally copying the surveillance footage. JA17.

Based on information he learned from the department, Bocock applied for a search warrant directed to Facebook, Inc., seeking information from Stanley's account. JA16–17. Bocock tailored the warrant to cover the period from the date the surveillance footage was created to the date when Stanley posted it on his Facebook page, because the illicit copy could have been created and provided to Stanley at any point in that window. JA16–17. The purpose of the warrant was to obtain evidence of the crime of computer trespass. JA16. As part of the application, Bocock submitted an affidavit that stated:

> On April 26, 2021 your affiant spoke with First Sergeant Shawn Richardson with the Rocky Mount Police Department

who reported their surveillance video footage from May 31, 2020 being unlawfully taken and provided to a citizen, Joe Stanley, who then posted the 17 minute surveillance video footage to Facebook on April 12, 2021 at 7:48 p.m. using Facebook account "Facebook.com/joestanley24067". First Sergeant Shawn Richardson advised there are only four employees who have access to their surveillance system and two of them are no longer employed with the police department. The subject Joe Stanley has made several posts to facebook showing his disdain for the government and the Rocky Mount Police Department.

JA17. A Roanoke City magistrate issued the warrant. JA18. Facebook provided responsive materials. JA14, JA108, JA110.

Bocock's review of the materials received from Facebook revealed that "information [was] being shared with Mr. Joe Stanley by multiple people via email to a [G]oogle email address" associated with Stanley. JA28. Acting on the knowledge gained from the Facebook warrant, Bocock continued the computer-trespass investigation by applying for a search warrant for Google, Inc., seeking information about Stanley's Google email address and associated account from the month the surveillance footage was created through the date of the warrant. JA21–23. As with the Facebook warrant, the purpose of the Google warrant was to find out who committed the crime of computer trespass by accessing,

copying, and distributing the surveillance video. JA28. A Salem magistrate issued the search warrant. JA21.

While the computer-trespass investigation was ongoing, Stanley filed motions to quash the search warrants issued to Facebook and Google for information associated with his accounts with both providers. See Case No. CL21-305 (Salem Cir. Ct.); Case No. CL21-1671 (Roanoke Cir. Ct.). After circuit courts denied the motions to quash, Stanley appealed the denials to the Supreme Court of Virginia, which refused his petition for appeal in April 2023. See *Stanley v. Commonwealth*, Record Nos. 220513 & 220526 (Va.).

Stanley was never prosecuted for any crime. JA111. Following the investigation, a special prosecutor thanked Bocock for providing "an incredibly detailed and thorough investigative report" detailing the computer-trespass investigation. JA56. After reviewing the evidence, the prosecutor determined that there was "not sufficient evidence to prove either malice or that the copy was obtained through an intentionally deceptive means," as would be required by Virginia Code § 18.2-152.4 in a criminal trial necessitating proof of guilt beyond a reasonable doubt. JA56. The prosecutor declined to prosecute based on the evidence

available, but he offered to reconsider if any new information came to light. JA56.

## II.    Procedural History

Stanley brought this action against Bocock in his official and individual capacities under 42 U.S.C. § 1983, alleging that the two searches conducted pursuant to warrants constituted retaliation, in violation of the First Amendment, and were unsupported by probable cause, in violation of the Fourth Amendment. JA6–12. After Bocock moved to dismiss the suit, Stanley filed a First Amended Complaint, without objection from Bocock. JA30–44. Bocock again moved to dismiss. JA54. The district court held a hearing on the motion. JA58–91. After the hearing, Stanley sought leave to amend his complaint a second time. JA105–17, JA124–25.

The district court granted Bocock's motion to dismiss and denied as futile Stanley's motion for leave to amend. JA156–57. The court held that the Eleventh Amendment barred the claims against Bocock in his official capacity and so dismissed those claims under Federal Rule of Civil

Procedure 12(b)(1).[1] JA142–44. Turning to Stanley's motion for leave to amend, the district court held that amendment would be futile because the existence of probable cause defeats both of Stanley's individual-capacity claims against Bocock. JA147–56. The court noted that "a Fourth Amendment claim" generally "cannot survive if the search was supported by probable [cause]." JA155.

The court applied the Supreme Court's reasoning in *Nieves v. Bartlett*, 587 U.S. 391 (2019), and *Hartman v. Moore*, 547 U.S. 250 (2006), to the First Amendment claim. Those precedents hold that plaintiffs generally must prove the absence of probable cause to prevail on a First Amendment retaliatory-arrest or retaliatory-prosecution claim, respectively. JA148–50. Because retaliatory-search-warrant claims present the same issue, "their related causal challenge should lead to the same solution." JA150 (quoting *Nieves*, 587 U.S. at 402). The court thus held that a "plaintiff bringing a retaliatory search warrant claim must sufficiently allege the absence of probable cause to survive a motion to dismiss." JA150.

---

[1] Stanley does not challenge this ruling on appeal. See generally Stanley Br. He has therefore abandoned those claims. See *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009).

8

The district court next held that Stanley's claims failed because both warrants were supported by probable cause; the "magistrate made a 'practical, common sense' determination that there was a fair probability that searching Stanley's Facebook and Google accounts would lead to evidence showing how Stanley came into possession of the video." JA154. Because Bocock had probable cause when he obtained the warrants, neither of Stanley's individual-capacity claims were viable. The court therefore dismissed them under Federal Rule of Civil Procedure 12(b)(6) and denied leave to amend as futile. JA154–56.

This appeal followed.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *SAS Assocs. 1, LLC v. City Council for the City of Chesapeake*, 91 F.4th 715, 719 (4th Cir. 2024); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). This Court also reviews de novo the district court's denial of Stanley's motion to amend as futile. *Save Our Sound OBX, Inc. v. North Carolina Dep't of Transp.*, 914 F.3d 213, 227 (4th Cir. 2019). "A proposed amendment is . . . futile if the claim it presents would not survive a

motion to dismiss." *Ibid.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

## SUMMARY OF ARGUMENT

The district court correctly dismissed the complaint and denied leave to amend. Both warrants were supported by probable cause, which is fatal to Stanley's constitutional claims.

Law-enforcement officers do not violate the Fourth Amendment when they search property pursuant to a warrant supported by probable cause. See *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009) ("[A] defendant challenging a search will lose if . . . the warrant issued was supported by probable cause."). The existence of probable cause supporting the warrants means that Stanley's Fourth Amendment claim fails. At the very least, Stanley had no clearly established right to be free from a search executed pursuant to a warrant supported by probable cause, so Bocock is entitled to qualified immunity.

A First Amendment claim that a search was retaliatory likewise fails when the search was pursuant to a warrant supported by probable cause. The Supreme Court has held that retaliatory-arrest and retaliatory-prosecution claims cannot proceed when probable cause

10

existed. *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006). The same principles apply with equal force in retaliatory-search claims. Probable cause is highly probative as to the lack of a causal connection between the plaintiff's speech and the officer's allegedly retaliatory actions. And here, probable cause plainly existed, which bars Stanley's First Amendment claim as well. At the very least, the uncertain nature of Stanley's alleged First Amendment right would entitle Bocock to qualified immunity.

Finally, this Court has held that futility is a sufficient reason to deny leave to amend. Stanley's proposed amendment was futile, and the district court correctly denied him leave to amend.

## ARGUMENT

### I. The district court correctly dismissed Stanley's Fourth Amendment unconstitutional-search claim

The district court properly held that Bocock had probable cause to support the search warrants and that the existence of probable cause defeated Stanley's Fourth Amendment claim. In any event, qualified immunity bars his Fourth Amendment claim. This Court should thus affirm.

11

A. **Stanley's Fourth Amendment claim cannot survive because Bocock had a warrant supported by probable cause**

1. Probable cause defeats an unreasonable search claim

Because the warrants here were supported by probable cause, this Court should affirm the district court's judgment dismissing Stanley's Fourth Amendment claim.

The Fourth Amendment prohibits "unreasonable searches." U.S. Const. amend IV. When "the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Camara v. Municipal Ct. of the City & Cnty. of S.F.*, 387 U.S. 523, 534 (1967). When a magistrate finds probable cause and issues a warrant, courts review that finding deferentially: "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, *the Fourth Amendment requires no more.*" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (emphasis added) (cleaned up).

Thus, law-enforcement officers do not violate the Fourth Amendment when they search property pursuant to a warrant supported

12

by probable cause. See, *e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009) ("[A] defendant challenging a search will lose if . . . the warrant issued was supported by probable cause."); *Porterfield v. Lott*, 156 F.3d 563, 571 (4th Cir. 1998) ("Because the search of [plaintiff] was effected pursuant to a valid warrant supported by probable cause, the search did not run afoul of [plaintiff's] Fourth Amendment right to be free from unreasonable searches."). The Supreme Court has not recognized any exception to this rule in the Fourth Amendment context. Compare Part II.A.2, *infra*.

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in [that] particular place." *United States v. Briscoe*, 101 F.4th 282, 294 (4th Cir. 2024) (quoting *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020)). Looking at the totality of the circumstances, a magistrate issuing a warrant need only find "the probability, and not a prima facie showing, of criminal activity." *Gates*, 462 U.S. at 235, 238 (citation omitted). "[T]he crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th

Cir. 1993). This "nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Ibid.* (quotation marks omitted). A magistrate may base a probable-cause finding on the "nontechnical, common-sense judgments of laymen." *Gates*, 462 U.S. at 235–36. And a reviewing court should give "great deference" to a magistrate's probable-cause determination, *id.* at 236 (quotation marks omitted), "and ask only whether the officer had a substantial basis for finding probable cause," *United States v. Darosa*, 102 F.4th 228, 233 (4th Cir. 2024) (quotation marks omitted).

Here, probable cause supported the warrants to search Stanley's Facebook and Google accounts. When seeking the first warrant, Bocock knew that someone had wrongfully taken surveillance footage from the police department and that Stanley had posted that footage to Facebook. See pp.3–4, *supra*. Bocock did not need to suspect Stanley himself of any wrongdoing for the warrant to be proper; rather, Bocock's reasonable belief that information gained from Stanley's Facebook account would further the investigation into who committed the apparent computer trespass supported the warrant application. See *Lalor*, 996 F.2d at 1582.

There was a fair probability that an inspection of Stanley's Facebook account would show who had sent Stanley the surveillance footage or otherwise lead to evidence showing how Stanley obtained it, bringing the investigation closer to who stole the footage in the first place. And later, after Bocock learned of Stanley's Google email address, there was a fair probability that Stanley's Google account information would show who had sent Stanley the video.

Stanley challenges Bocock's motive for seeking the warrants but does not otherwise challenge the veracity of the warrant affidavits. The existence of probable cause supporting both warrants is therefore fatal to his Fourth Amendment claim. See, *e.g.*, *Pearson*, 555 U.S. at 241–42 ("[A] defendant challenging a search will lose if . . . the warrant issued was supported by probable cause.").

### 2. Stanley's arguments to the contrary fail

Stanley's arguments to the contrary are unavailing. First, Stanley contends that probable cause to believe that computer trespass had occurred could not have supported the warrants because the affidavits do not mention a computer. Stanley Br. 18–19. But courts "should not invalidate warrants by interpreting affidavits in a hypertechnical, rather

than a commonsense, manner." *Gates*, 462 U.S. at 236 (cleaned up). The Virginia Computer Crimes Act includes a broad definition of "computer," and it would beggar belief to conclude that the magistrate was unreasonable in determining that someone may have used a "computer" to steal surveillance footage and send it to Stanley.

Specifically, Virginia's computer trespass statute forbids the use of "a computer or computer network to make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data." Va. Code § 18.2-152.4. "Computer data" is defined as "any representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network." *Id.* § 18.2-152.2. And "computer" is defined to include "device[s] that accept[] information in digital or similar form and manipulate[] it for a result based on a sequence of instructions." *Ibid.*

These are expansive definitions that capture most electronic devices, including video surveillance systems that store video files that can be shared online. Indeed, the Supreme Court of Virginia recently

16

reinstated a conviction for computer fraud under the Virginia Computer Crimes Act based on the defendant's use of an ATM to deposit forged checks, adopting in full the dissenting opinion from the en banc Court of Appeals of Virginia. See *Commonwealth v. Wallace*, 907 S.E.2d 804 (Va. 2024) (reversing the judgment "[f]or the reasons stated in the dissenting opinion of the en banc Court of Appeals"). That opinion had emphasized how "the General Assembly broadly redefined the original definition of 'computer'" in Virginia Code § 18.2-152.2 to include all but a few "very basic devices" like "simple calculators." *Wallace v. Commonwealth*, 896 S.E.2d 384, 395 (Va. App. 2024) (en banc) (Athey, J., dissenting). The district court thus correctly concluded that it follows from these statutory definitions that "even without Bocock explicitly using the word 'computer' in his affidavit, a reasonable magistrate would still find probable cause for the crime of computer trespass by noting the 'surveillance video' was taken from the Rocky Mount Police Department's 'surveillance system' and uploaded to the internet." JA153.

The warrant affidavits did not need to present sufficient facts to *prove* the crime of computer trespass or show that Stanley was the one who committed it. The affidavits only needed to include facts showing a

17

fair probability that evidence of that crime would be found in Stanley's Facebook and Google accounts—facts the affidavits contained, particularly given Virginia's expansive definitions for computer crimes.

Second, Stanley argues that Bocock "conceded" in the affidavit that Stanley was "a target" because of his speech. Stanley Br. 13–14. This contention is incorrect. Stanley's online Facebook and Google *accounts*— digital information in Facebook's and Google's respective custody—were the search subjects because Stanley was in possession of the stolen video footage, as evidenced by the fact that Stanley posted that footage to Facebook. Stanley himself was not targeted, nor were his home or other property, because the data searched was stored in servers maintained by Facebook and Google, not by Stanley or in property Stanley owned. The point of the search was to discover who had illegally copied the footage.

Bocock's statement in the affidavit that "Joe Stanley has made several posts to facebook showing his disdain for the government and the Rocky Mount Police Department," JA17, was included because it tended to show that *whoever* had taken the footage had done so with malicious intent, an element of computer trespass under Virginia law. See Va. Code § 18.2-152.4(A); see pp.3–5, *supra*. Stanley's contentious relationship

with the Rocky Mount Police Department is relevant because he likely obtained the unauthorized copy of the surveillance footage from the person who stole it. The fact that the person gave the footage to Stanley, who had previously made Facebook posts about the department, tended to show that the person purposefully stole the footage in order for it to be shared. Evidence from Stanley's accounts thus had a fair probability of supporting a computer-trespass charge.

Third, Stanley contends that the warrants are "akin to general warrants." Stanley Br. 5; see also *id.* at 19 ("[T]he search warrants at issue here are the 21st century equivalents of general warrants."). But the warrants were specifically tailored to determine who had sent the video footage to Stanley. Crucially, the warrants sought information only from the relevant timeframe—approximately one year—between the date of the surveillance footage and the date Stanley posted it. See pp.3–4, *supra*. This Court has approved search warrants that authorized officers to search numerous categories of information on Facebook but were limited to a relevant timeframe. See *United States v. Zelaya-Veliz*, 94 F.4th 321, 337–40 (4th Cir. 2024) (citing *United States v. McCall*, 84 F.4th 1317, 1328 (11th Cir. 2023)). Indeed, in *McCall*, the Eleventh

Circuit held that "[c]loud or data-based warrants with a sufficiently tailored time-based limitation can undermine any claim that they are the 'internet-era version of a "general warrant."'" 84 F.4th at 1328 (quoting *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017)).

Likewise, here the warrants were temporally limited and thus complied with the Fourth Amendment. That Stanley may have accumulated significant personal information in his Facebook or Google accounts does not turn these warrants into general warrants any more than would the choice to store significant personal information in a filing cabinet that later becomes the subject of a search warrant.

Fourth, Stanley suggests that the fact that Bocock sought the warrants outside of the judicial circuit in which Stanley resided is suggestive of "bad faith" and an "unlawful purpose." Stanley Br. 13–14. Not so. In Virginia, "a magistrate may issue search warrants . . . throughout the Commonwealth." Va. Code § 19.2-44. Stanley identifies no precedent suggesting that a magistrate may not issue a warrant to be served on a foreign electronic service provider in accordance with Virginia Code § 19.2-70.3. Nor does he provide any authority suggesting that the magistrate's territorial jurisdiction is even germane to the

20

federal constitutional analysis. Rather, the relevant questions are whether there was probable cause and whether neutral and detached magistrates issued the warrants—not whether the warrants complied with Virginia's procedural rules (even though the warrants at issue here did). See, *e.g.*, *United States v. Conine*, 33 F.3d 467, 471 (5th Cir. 1994) (holding that evidence was admissible when obtained pursuant to a search warrant issued by an out-of-district judge because state law authorized extraterritorial acts).

Finally, Stanley incorrectly contends that a letter from the special prosecutor "recognized that there was no probable cause." Stanley Br. 5. In reality, the special prosecutor's letter says *nothing* about probable cause.[2] Rather, he concluded that after the investigation had been completed, there was "not sufficient evidence to prove either malice or that the copy was obtained through an intentionally deceptive means" and that, consequently, there was "no crime which [could] be prosecuted." JA56. Whether there is sufficient evidence to convict is a much higher

---

[2] The special prosecutor's letter was not attached to the operative complaint but was explicitly incorporated into the complaint by reference, JA49, and therefore may be appropriately considered in evaluating a motion to dismiss, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

standard than whether there was probable cause to support a warrant. See *United States v. Drake*, 64 F.4th 220, 228 (4th Cir. 2023) ("The fact that [the defendant] was acquitted [on a motion for judgment of acquittal] means only that there was not sufficient evidence *admitted at trial* to prove her guilt *beyond a reasonable doubt*. Whether there was probable cause to conclude she committed a crime is, of course, a different and less demanding standard." (citation omitted)); see also, *e.g.*, *Phillips v. Corbin*, 132 F.3d 867, 869 (2d Cir. 1998) (per curiam) ("[T]he grand jury's refusal to indict [the plaintiff] does not, as a matter of law, establish that the officers lacked probable cause to arrest her.").

Bocock had probable cause to search Stanley's Facebook and Google accounts, and this probable cause precludes Stanley's Fourth Amendment claim. This Court should therefore affirm.

## B.   In any event, Bocock is entitled to qualified immunity on the Fourth Amendment claim

Alternatively, Stanley's claims "can be quickly disposed of on the basis of qualified immunity." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). Stanley cannot establish that Bocock violated any "clearly established" constitutional right. Although the district court "[did] not reach the issue of qualified immunity" because it

held that Stanley failed to state a claim against Bocock, JA142, this Court can consider qualified immunity as an alternative basis for affirmance. See, *e.g.*, *Virginia Nat'l Bank v. United States*, 443 F.2d 1030, 1035 (4th Cir. 1971).

Qualified immunity protects officers sued in their personal capacities "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023) (quotation marks omitted); see *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). Qualified immunity serves the "important interest[]" of "shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018). The reviewing court, in its discretion, may address either prong of this analysis first. *Pearson*, 555 U.S. at 236.

Qualified immunity bars Stanley's Fourth Amendment claim against Bocock because Stanley has not alleged facts demonstrating that Bocock's actions violated a clearly established constitutional right. For a right to be "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *Adams*, 884 F.3d at 226 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam), and *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); see *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). "The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality,'" so this Court "consider[s] whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams*, 884 F.3d at 227 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and *Mullenix*, 577 U.S. at 12). "Such specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *City of Tahlequah v. Bond*, 595 U.S. 9, 12–13 (2021) (quotation marks omitted).

Stanley makes no argument—nor could he—that a reasonable officer would understand that he was violating an individual's Fourth Amendment rights by executing a facially valid warrant issued by a neutral magistrate. In fact, case law establishes the opposite: Bocock's objectively reasonable belief that probable cause existed affirmatively *precludes* Stanley's claims. See p.41, *infra*. An officer is not liable for executing a search pursuant to a warrant when he possesses an objectively reasonable belief that probable cause exists. *Messerschmidt v. Millender*, 565 U.S. 535, 546–47 (2012).

And a search, when supported by a warrant, has the added benefit of a neutral third-party's approval. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Leon*, 468 U.S. 897, 921 (1984). "[T]he magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant *cannot be held liable*." *Messerschmidt,* 565 U.S. at 547–48 (emphasis added)

(quoting *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986)); *see also Anderson*, 483 U.S. at 641 ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").

Bocock knew that someone had illegally copied surveillance footage, that the footage had come into Stanley's possession, and that Stanley had posted it online. *See* pp.3–4, *supra*. At a minimum, Bocock reasonably relied upon the magistrate's judgment that these facts established probable cause to search Stanley's online accounts. Bocock is therefore entitled to qualified immunity on Stanley's Fourth Amendment claim.

## II. The district court correctly dismissed Stanley's First Amendment retaliatory-search-warrant claim

### A. Stanley's First Amendment retaliatory-search claim fails because Bocock obtained a warrant supported by probable cause

#### 1. Probable cause defeats a retaliatory-search claim

The district court also correctly rejected Stanley's First Amendment retaliatory-search claim. Although this Court has not ruled on whether probable cause defeats a retaliatory-search-warrant claim, Stanley

26

provides no case supporting his claim. To the contrary, the Fifth Circuit has agreed with the court below (and a litany of district courts around the country) that probable cause *does* defeat a retaliatory-search-warrant claim. See *Degenhardt v. Bintliff*, 117 F.4th 747, 758–59 (5th Cir. 2024). This Court should decline Stanley's invitation to create a circuit split.

The First Amendment protects citizens from retaliation based on their speech. Generally, to prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) "his speech is protected; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the protected speech and the adverse action." *Nazario v. Gutierrez*, 103 F.4th 213, 236 (4th Cir. 2024) (quotation marks omitted).[3]

In First Amendment cases alleging retaliatory arrests or retaliatory prosecutions, however, the Supreme Court has held that the lack of probable cause is also a required element. *Nieves v. Bartlett*, 587 U.S. 391, 399–404 (2019) (retaliatory arrest); *Hartman v. Moore*, 547 U.S. 250,

---

[3] As the district court recognized, Stanley does not clearly identify his First Amendment claim as a retaliation claim, but the language he uses indicates that he is making a retaliation claim. JA147 n.4. Stanley does not appear to challenge that characterization on appeal.

265–66 (2006) (retaliatory prosecution). Although "neither the Supreme Court nor [this Court] has ruled on the issue of whether probable cause defeats a retaliatory search warrant claim," courts around the country "have held that it does." JA149; see pp.33–34 & n.5, *infra*.

This is not surprising. The same reasoning the Supreme Court applied in requiring a plaintiff to plead and prove the absence of probable cause in retaliatory-prosecution and retaliatory-arrest claims applies with full force to retaliatory-search claims. In *Hartman*, for instance, the Supreme Court held that a plaintiff must plead and prove the absence of probable cause to prevail on a retaliatory-prosecution claim. 547 U.S. at 252. The Court explained that "the need to prove a chain of causation from animus to injury" in retaliatory-prosecution claims provided the "strongest justification for the no-probable-cause requirement" because such cases will always involve "a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge." *Id.* at 259–61. Requiring the plaintiff to prove the absence of probable cause addresses the complex causation problem in these sorts of retaliation claims by "bridg[ing] the

28

gap between the nonprosecuting government agent's motive and the prosecutor's action" and "address[ing] the presumption of prosecutorial regularity." *Id.* at 263.

In *Nieves*, the Supreme Court extended *Hartman*'s rule to retaliatory-arrest claims because "protected speech is often a legitimate consideration when deciding whether to make an arrest," and such claims therefore implicate the same "causal complexity previously recognized by [the] Court" in *Hartman*. 587 U.S. at 403–04. For both retaliatory-arrest and retaliatory-prosecution claims, "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." *Id.* at 402. Thus, the Court held that the same problem called for the same solution: requiring the plaintiff to "plead and prove the absence of probable cause." *Ibid.*

The same concerns animate retaliatory-search claims. Just as in retaliatory-arrest and retaliatory-prosecution cases, retaliatory-search-warrant cases "give rise to complex causal inquiries" that make it "particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially

criminal conduct." *Nieves*, 587 U.S. at 402. This is especially so because "protected speech is often a legitimate consideration" in conducting a criminal investigation, such as when the crime at issue involves an intent element that sentiments expressed in protected speech tend to support. *Ibid.*; see pp.18–19, *supra*.

Indeed, when a plaintiff alleges that an officer conducted an unlawful search, the question of probable cause "looms large." *Hartman*, 547 U.S. at 265. Its existence carries "obvious" and "powerful" "evidentiary significance" to the causation inquiry. *Id.* at 261, 265; see also *id.* at 261 (probable cause provides a "distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation"). The lack of probable cause helps "reinforce the retaliation evidence and show that retaliation was the but-for basis" of the search. *Id.* at 261. On the other hand, a showing of probable cause strongly suggests that the search "would have occurred even without a retaliatory motive." *Ibid.* Because the existence of probable cause arises in "practically all" retaliatory-search-warrant cases, has "high probative force," and "can be made mandatory with little or no added cost" to

litigants, plaintiffs must prove lack of probable cause in retaliatory-search-warrant claims. See *id.* at 265.

The causation difficulties presented in a retaliatory-search-warrant case are closely akin to those presented in retaliatory-prosecution cases. Just as in retaliatory-prosecution cases, for searches conducted pursuant to warrants, an injury does not occur merely because an officer seeks to retaliate; the injury occurs only if the officer successfully convinces a third party to act—namely, a neutral and independent magistrate to issue the search warrant. See *Hartman*, 547 U.S. at 262. In other words, a plaintiff is not injured merely because an officer seeks a search warrant; the injury occurs when the officer *obtains* and executes the warrant. Thus, "the cause of action will not be strictly for retaliatory [execution of a search warrant], but for successful retaliatory inducement to [issue a search warrant]." *Ibid.*

Like in *Hartman*, therefore, requiring plaintiffs in retaliatory-search-warrant cases to establish the absence of probable cause is a critical part of proving causation—that the officer's supposed retaliatory motive actually resulted in the issuance of the warrant and the resulting search. See *Hartman*, 547 U.S. at 263; *Nazario*, 103 F.4th at 237. And

similar to the "longstanding presumption of regularity accorded to prosecutorial decisionmaking," *Hartman*, 547 U.S. at 263, "great deference" must be given to "[a] magistrate's determination of probable cause," *Gates*, 462 U.S. at 236. To hold that an executed search warrant constituted retaliation, even though a neutral magistrate issued it with probable cause, would not comport with this deference. Cf. *Hartman*, 547 U.S. at 263 (explaining that a malicious-prosecution claim directed against police "cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police"). Rather, the presence of probable cause "will suggest that [issuance and execution of the warrant] would have occurred even without a retaliatory motive," thereby precluding the retaliation claim. *Id.* at 261; see also *id.* at 260 (observing that even "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

Just as in *Nieves* and *Hartman*, this no-probable-cause requirement is necessary to prevent serious interference with legitimate law enforcement. State of mind is "easy to allege and hard to disprove," so a subjective inquiry into the officer's state of mind would "threaten to

set off broad-ranging discovery" culminating in "years of litigation." *Nieves*, 587 U.S. at 403–04 (quotation marks omitted). It would "dampen the ardor" of police, "compromise evenhanded application of the law," and create "overwhelming litigation risks" because state of mind is difficult to prove. *Ibid.* (quotation marks omitted).

Recognizing these legal and practical realities, several courts, including the Fifth Circuit, have held that probable cause defeats a retaliatory-search-warrant claim. By contrast, Stanley points to *no case* holding otherwise.[4] Most significantly, the Fifth Circuit has applied *Nieves* to a retaliatory-search claim, holding that a lawful basis for a search defeats the claim. *Degenhardt v. Bintliff*, 117 F.4th 747, 758–59 (5th Cir. 2024). Further, in an unpublished decision, the Second Circuit relied in part on the existence of probable cause to affirm summary judgment for the defendants on a retaliatory-search claim. See *Smolicz v. Borough/Town of Naugatuck*, 281 Fed. Appx. 32, 34 (2d Cir. 2008).

---

[4] The only case of which Appellee is aware that held otherwise—a case that Stanley does not cite in his brief, for good reason—is *Skoog v. County of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006). The Ninth Circuit has since recognized that *Nieves* "abrogated" *Skoog*. *Ballentine v. Tucker*, 28 F.4th 54, 65 n.1 (9th Cir. 2022).

And district courts across the country have agreed with the district court here that a plaintiff must generally plead the absence of probable cause for a retaliatory-search claim. The District of Colorado, for instance, held that "the reasoning in *Hartman* for requiring pleading the lack of probable cause in a retaliatory prosecution case applies equally to a claim of a retaliatory search especially where, as here, the searches were conducted based on warrants approved by neutral judicial officers." *Armendariz v. City of Colo. Springs*, No. 1:23-cv-01951, 2024 WL 2139316, at *12–13 (D. Colo. Apr. 10, 2024). And the District of New Mexico held that "the reasoning set forth in *Hartman* applies equally" to a "retaliatory execution of a search warrant" because the "[p]arties will be just as likely to discuss probable cause or lack thereof in regards to an allegedly retaliatory search warrant as they are to discuss it for a retaliatory arrest." *Chavez v. City of Albuquerque*, No. 13cv00557, 2014 WL 12796875, at *3 (D.N.M. Apr. 14, 2014).[5]

---

[5] See also, *e.g.*, *Hall v. Putnam Cnty. Comm'n*, No. 3:22-0277, 2024 WL 559603, at *9–12 (S.D. W. Va. Feb. 12, 2024); *Weinhaus v. Steele*, No. 4:17 CV 1941, 2019 WL 3803477, at *12 (E.D. Mo. Aug. 13, 2019); *Fredin v. Clysdale*, No. 18-cv-0510, 2018 WL 7020186, at *7–8, *14 (D. Minn. Dec. 20, 2018), report & recommendation adopted, 2019 WL 802048 (D. Minn. Feb. 21, 2019), aff'd, 794 Fed. Appx. 555 (8th Cir. 2020) (per curiam).

Stanley has little to say about this weight of authority. Instead, Stanley argues that the Supreme Court applied a no-probable-cause requirement in retaliatory-arrest and retaliatory-prosecution cases because the common-law analogues of false arrest and abuse of process require a showing of a lack of probable cause. Stanley Br. 14–15. He further proffers a common-law analogue for an unreasonable-search claim—trespass—which he contends does not require the absence of probable cause. *Ibid.* But the Supreme Court did not root its no-probable-cause requirement in the common law. Indeed, in *Hartman*, the Supreme Court specifically discounted the defendants' common-law-analogue argument before ruling for the defendants based on the causation issues discussed above. 547 U.S. at 258. And in *Nieves*, the Supreme Court looked at the common law for confirmation *after* concluding that the no-probable-cause requirement should apply to retaliatory-arrest claims. 587 U.S. at 405.

The Supreme Court did not base either of its decisions on the common law, and neither should this Court. But even if this Court considers trespass as a useful analogue, at common law, government officials sued for trespass could raise a valid warrant as a defense. See

*Smith v. Travelpiece*, 31 F.4th 878, 886 n.10 (4th Cir. 2022); *Dellastatious v. Boyce*, 147 S.E. 267 (Va. 1929) (reversing a common-law trespass verdict against a prohibition inspector because the inspector had operated under a valid warrant). By the same token, the valid warrants supported by probable cause here constitute a complete defense to Stanley's claims.

Accordingly, probable cause defeats Stanley's retaliatory-search claim. And, as discussed above, probable cause supported the warrants to search Stanley's Facebook and Google accounts. See pp.14–15, *supra*. When seeking the first warrant, Bocock knew that someone had wrongfully taken surveillance footage from the police department and that Stanley had posted that footage to Facebook, so Bocock's reasonable belief that information gained from Stanley's Facebook account would further the investigation into who committed computer trespass supported the warrant application. See pp.3–4, 14–15, *supra*. And later, after Bocock learned Stanley's Google email address, there was a fair probability that Stanley's Google account information would show who had sent Stanley the video. See pp.5–6, 15, *supra*. The existence of probable cause thus defeats Stanley's First Amendment claim.

### 2. Stanley did not allege facts that could satisfy the narrow exception to the no-probable-cause requirement

Stanley's argument that he satisfied the narrow exception to the no-probable-cause requirement laid out by the Supreme Court in *Nieves* and *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam), also fails. See Stanley Br. 15–19. As the district court correctly held, Stanley "has not alleged this narrow exception in relation to his retaliatory search warrant claim." JA148 n.5.

In *Nieves*, the Supreme Court articulated a narrow exception to the no-probable-cause rule, explaining that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. In considering this objective evidence, "the statements and motivations of the particular arresting officer are irrelevant." *Ibid.* (quotation marks omitted). A few months ago, the Supreme Court clarified that a plaintiff need not produce "virtually identical and identifiable comparators"; rather, a survey of data on criminal charges can suffice. *Gonzalez*, 602 U.S. at 658. But when a

37

plaintiff does not provide objective evidence that he was treated differently than similarly situated comparators, he remains fully subject to the no-probable-cause requirement. *Nieves*, 587 U.S. at 407.

As an initial matter, the *Nieves* exception—allowing plaintiffs to proceed based on objective evidence that similarly situated individuals were not arrested—should not apply to retaliatory-search claims. The Supreme Court did not apply the exception to a retaliatory-prosecution claim in *Hartman*; rather, it applied the exception only to a retaliatory-arrest claim in *Nieves*. See 587 U.S. at 407. This distinction makes sense, because the officer in a retaliatory-arrest claim often has sole decision-making authority about whether to arrest. In contrast, retaliatory-prosecution claims necessarily involve layered decision making—even if an officer decides to retaliate, the prosecutor still must decide to prosecute. See *Hartman*, 547 U.S. at 261–62. In this sense, a search supported by a warrant resembles a prosecution, because the decision-making requires multiple independent actors.

In fact, the process for obtaining a search warrant contains even more protection for individual rights than the process for initiating a prosecution. A search warrant must be issued by a neutral third party (a

38

magistrate belonging to the judicial branch) rather than a prosecutor belonging to the same executive branch as the law-enforcement officer. See *Leon*, 468 U.S. at 913. The warrant process thus provides sufficient protection for individuals without the *Nieves* exception. And even though the *Nieves* exception applies to all arrests, including those supported by warrants, it need not be extended to *searches* supported by warrants, because an arrest is generally more intrusive than a search. See generally *Coolidge v. New Hampshire*, 403 U.S. 443, 477–78 (1971).

In any event, Stanley alleged no facts here that could satisfy the *Nieves* exception. Stanley has not even attempted to identify any similarly situated comparators who were not searched, much less has he alleged any objective facts to that effect. Rather, he contends that *Gonzalez* stands for the proposition that the "only limitation on the kind of evidence that the plaintiff must present at the threshold stage is that this evidence must be 'objective.'" Stanley Br. 8. But the required evidence must be more than merely "objective"; it must be "objective evidence that he was [searched] when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Gonzalez*, 602 U.S. at 655 (quoting *Nieves*, 587 U.S. at 407).

Stanley's complaint is devoid of alleged facts showing that other similarly situated individuals were not searched. His contention that he has "objective" evidence of a retaliatory motive is no substitute; "the statements and motivations of the particular arresting officer are irrelevant" to the exception. *Nieves*, 587 U.S. at 407. Accordingly, the "narrow" *Nieves* exception is inapplicable in this case, see *Gonzalez*, 602 U.S. at 655, and probable cause precludes Stanley's retaliatory-search claim.

### B. In any event, Bocock is entitled to qualified immunity on the First Amendment claim

Alternatively, Stanley's First Amendment claim can also "be quickly disposed of on the basis of qualified immunity." *Sheppard*, 993 F.3d at 238. Stanley cannot establish that Bocock violated any clearly established First Amendment right.

As discussed above, the weight of authority supports a determination that probable cause defeats a retaliatory-search claim. See pp.33–35 & n.5, *supra*. Stanley can point to no binding authority holding that probable cause does not bar a retaliatory-search claim. See Part II.A.1, *supra*. In determining whether a right is clearly established, this Court "ordinarily need not look beyond the decisions of the Supreme

Court, this court of appeals, and the highest court of the state in which the cases arose," *Hill v. Crum*, 727 F.3d 312, 322 (4th Cir. 2013), and as the district court here observed, "neither the Supreme Court nor [this Court] has ruled on the issue of whether probable cause defeats a retaliatory search warrant claim," JA149. Accordingly, when Bocock obtained the two warrants, there was no clearly established First Amendment right to be free from a search supported by both probable cause and a warrant. In other words, the law did not clearly prohibit an officer from obtaining and executing a warrant supported by probable cause even if protected speech formed part of the basis for the warrant.

Indeed, if anything, precedent establishes that, even if probable cause did not in retrospect support the search warrants, Bocock's objectively reasonable belief that probable cause existed would nevertheless preclude Stanley's claims. In the Fourth Amendment context, an officer is not liable for executing a search pursuant to a warrant when he possesses an objectively reasonable belief that probable cause exists. *Messerschmidt*, 565 U.S. at 546–47; see p.25, *supra*. This objectively reasonable belief, or arguable probable cause, should likewise defeat a retaliatory-search claim. A search is generally far less obtrusive

41

than an arrest or a prosecution. See generally *Coolidge*, 403 U.S. at 477–78. And a search, when supported by a warrant, has the added benefit of a neutral third-party's approval. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

Moreover, the arguable-probable-cause standard itself contains built-in protections against retaliation—a deceptive officer will not be able to claim that he reasonably relied on a warrant. See *id.* at 923. And finally, applying the arguable-probable-cause standard would harmonize retaliatory-search claims with Fourth Amendment precedents, in keeping with the Supreme Court's reasoning in *Nieves*. See 587 U.S. at 403. For all these reasons, Bocock is entitled to qualified immunity.

## III. The district court appropriately denied leave to amend as futile

Along with granting Bocock's motion to dismiss, the district court correctly denied leave to amend as futile. The allegations of the First Amended Complaint and the Second Amended Complaint are largely the same. Compare JA45–53 (First Amended Complaint), with JA105–17 (Second Amended Complaint). The only significant difference between

the two is an added allegation about the alleged chilling effect on Stanley's speech. See JA111; JA79 (Stanley's counsel asking for leave to amend to add an allegation "that this alleged retaliatory action adversely affected him"). But the alleged chilling effect was irrelevant to the fatal defect in Stanley's claims—that probable cause supported the warrants. The district court correctly denied leave to amend because "Stanley's claims against Bocock are futile, even as alleged in his proposed second amended complaint." JA138.

District courts should "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But justice does not require courts to permit plaintiffs pointlessly to extend litigation. Such an extension works justice for neither the plaintiff nor the defendant. Consequently, a court may deny a motion to amend when "the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999)). This is black-letter law.

Rather than explain why amendment would *not* be futile, Stanley curiously argues that futility alone "is an insufficient reason" to deny leave to amend, relying on *Moore v. Equitrans L.P.*, 818 Fed. Appx. 212

(4th Cir. 2020). Stanley Br. 21. But in *Moore*, this Court reversed because the district court had "abused its discretion by not sufficiently explaining its rationale" for denying leave to amend. 818 Fed. Appx. at 214. Far from suggesting that futility was an insufficient ground for denying leave to amend, this Court "remand[ed] for the district court at least to explain more thoroughly why it believed leave to amend would be futile." *Ibid.* This Court has consistently affirmed district courts that denied leave to amend when the amendment would be futile. *E.g.*, *In re Triangle Capital Corp. Securities Litig.*, 988 F.3d 743, 745 (4th Cir. 2021); *Save Our Sound OBX*, 914 F.3d at 228–29; *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 200 (4th Cir. 2014); *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 282 (4th Cir. 2014); *HCMF Corp.*, 238 F.3d at 275.

"A proposed amendment is futile when it is clearly insufficient or frivolous on its face," or when "the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX*, 914 F.3d at 228 (quotation marks omitted). Stanley's proposed Second Amended Complaint would not have cured any of the deficiencies discussed above, and so it would not have survived a motion to dismiss. Indeed, the district court considered the allegations in the proposed Second Amended Complaint

when analyzing Stanley's claims. JA139. The district court therefore appropriately denied leave to amend.

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

CHRISTOPHER T. BOCOCK, individually and in his official capacity as a Police Officer of the Virginia State Police

*/s/ Graham K. Bryant*

GRAHAM K. BRYANT
*Deputy Solicitor General*

| | |
|---|---|
| JASON S. MIYARES<br>*Attorney General* | ERIKA L. MALEY<br>*Solicitor General* |
| R. COOPER VAUGHN<br>*Assistant Attorney General* | KEVIN M. GALLAGHER<br>*Principal Deputy Solicitor General* |
| Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219<br>(804) 786-2071 – Telephone<br>(804) 786-1991 – Facsimile<br>SolicitorGeneral@oag.state.va.us | MEREDITH L. BAKER<br>*Assistant Solicitor General* |
| January 27, 2025 | *Counsel for Defendant-Appellee* |

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 8,645 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

/s/ Graham K. Bryant
_____
GRAHAM K. BRYANT
*Deputy Solicitor General*

## CERTIFICATE OF SERVICE

I certify that on January 27, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Graham K. Bryant

GRAHAM K. BRYANT
*Deputy Solicitor General*